# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WALTER OLA SCOTT,** | : | **CIVIL ACTION NO. 3:16-cv-2104** |
| | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **FRACKVILLE PRISON,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Walter Ola Scott ("Scott"), a state inmate who, at all times relevant, was incarcerated at the State Correctional Institution at Frackville ("SCI-Frackville"), Pennsylvania, commenced this action on August 29, 2016, in the United States District Court for the Eastern District of Pennsylvania.  (Doc. 1-1). The case was transferred to this district on October 19, 2016.  (Doc. 8).  The matter is proceeding *via* an Amended Complaint (Doc. 13).

Presently pending is a motion (Doc. 17) for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), on the issue of exhaustion, filed on January 20, 2017, on behalf of remaining Defendants Officer Kraynaks, Jamis Hex, C.O Krames Kramer, and C.O. Weiner.  A brief (Doc. 18) in support of the motion and statement of material facts (Doc. 19) were filed on that same date.  Scott failed to oppose the motion.  On May 18, 2017, he was directed to respond to the motion by

filing an opposition brief and a statement of material facts.  (Doc. 20).  He was

cautioned that his failure to file an opposition brief and statement of material facts

would render the motion unopposed and would result in an admission to the

Defendants' statement of material facts.  (Id.)  Although Scott filed an opposition

brief, he failed to file a statement of material facts.  Consequently, Defendants'

statement of material facts is deemed admitted.

For the reasons set forth below, the motion for summary judgment will be

granted.

## I.    Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340

(3d Cir. 1990).  "[T]his standard provides that the mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine issue of

material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)

(emphasis in original); Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990).

A disputed fact is "material" if proof of its existence or nonexistence would affect

the outcome of the case under applicable substantive law.  Id.; Gray v. York

Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is

"genuine" if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.  Anderson, 477 U.S. at 257; Brenner v. Local 514, United

Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d

Cir. 1991).

The party moving for summary judgment bears the burden of showing the

absence of a genuine issue as to any material fact.  Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d

Cir. 1996).  Once such a showing has been made, the non-moving party must go

beyond the pleadings with affidavits, depositions, answers to interrogatories or the

like in order to demonstrate specific material facts which give rise to a genuine

issue.  FED. R. CIV. P. 56; Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v.

Zenith Radio, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must

do more than simply show that there is some metaphysical doubt as to the material

facts"); Wooler v. Citizens Bank, 274 F. A'ppx. 177, 179 (3d Cir. 2008).  The

party opposing the motion must produce evidence to show the existence of every

element essential to its case, which it bears the burden of proving at trial, because

"a complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." Id. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" Picozzi v. Haulderman, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Big Apple BMW, Inc. v. BMW of North America. Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## II.     Statement of Material Facts

"A motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried." See L.R. 56.1. The opposing party shall file a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried. Id. "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Id. Because Scott failed to oppose Defendants' statement of material facts, all facts contained therein are deemed admitted.

Scott alleges that his cell mate, Lynch, was threatening him and swung at him and that he left his cell to get help. (Doc. 13, pp. 2-3). When he reported the incident to Correctional Officer Kraynak, Kraynak instructed him to "tell the Sergeant Boyer." (Id. at 2). Boyer told him to sit in the TV room. (Id.). He alleges that he was in the TV room and "Next thing I no [sic] they coffit [sic] me and put me in the hole for 30 day for asking for help from them." (Id. at 3). He takes issue with being sanctioned for simply asking for help and alleges that Defendants are failing to protect him from Lynch. (Id.) He states that Defendants "need to pay me $2000 dollars for each day I stayed in the hole." (Doc. 21, p. 1).

The Pennsylvania Department of Corrections ("DOC") Administrative Directive 801 (DC-ADM 801) sets forth applicable procedures for inmate discipline and outlines a system of appeals and sanctions for inmate misconduct. (Doc. 19, ¶ 2). Pursuant to DC-ADM 801, once an inmate is found guilty of a misconduct charge, he may appeal that decision to the Program Review Committee ("PRC"). (Id. at 3). If dissatisfied with the PRC's response, the inmate may appeal to the Superintendent of the facility. (Id. at 4). The final level of appeal is to the Office of the Chief Hearing Examiner. (Id. at 5).

On August 19, 2016, Scott received misconduct B401672 for refusing to obey an order. (Doc. 1-1, pp. 9, 11; Doc. 19-1, p. 53). At the August 23, 2016

disciplinary hearing, the hearing examiner stated that she "believes Officer

Kraynak's report over inmate Scott's denial that he refused to obey an order when

Officer Kraynak ordered inmate Scott to lock in because yard was coming in.

Inmate Scott refused the order to lock in. . . at which time a Sgt. and Officer

handcuffed I/M Scott and escorted him to the RHU." (Doc. 1-1, p. 9). Scott was

sanctioned with thirty days disciplinary custody. (Id.) He did not appeal his

misconduct to the Office of the Chief Hearing Examiner. (Doc. 19, ¶ 7; Doc. 19-1,

¶¶ 12, 13).

## III.  Discussion

Defendants seek an entry of summary judgment on the grounds that Scott

failed to fully exhaust his administrative remedies, as required by 42 U.S. C. §

1997e(a). The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that

an inmate exhaust 'such administrative remedies as are available' before bringing

suit to challenge prison conditions." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016);

see Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of

this court—or any other—to excuse compliance with the exhaustion requirement,

whether on the ground of futility, inadequacy or any other basis."). The text

"suggests no limits on an inmate's obligation to exhaust– irrespective of 'special

circumstances.'" Id. "And that mandatory language means a court may not excuse

a failure to exhaust, even to take such circumstances into account. See Miller v.

French, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining

that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to

judicial discretion")." Id. at 1856-57.

Significantly, "the PLRA contains its own, textual exception to mandatory

exhaustion," i.e. the PLRA requires exhaustion of "available" administrative

remedies. Id. at 1858. "Available" is defined as "capable of use for the

accomplishment of a purpose" and that which "is accessible or may be obtained."

Id. at 1858-59, quoting Booth v. Churner, 532 U.S. 731, 737-38 (2001). There are

three instances in which administrative remedies are unavailable. "First, as Booth

made clear, an administrative procedure is unavailable when (despite what

regulations or guidance materials may promise) it operates as a simple dead end–

with officers unable or consistently unwilling to provide relief to aggrieved

inmates." Id. at 1859. "Next an administrative scheme might be so opaque that it

becomes, practically speaking, incapable of use." Id. Finally, administrative

remedies are unavailable "when prison administrators thwart inmates from taking

advantage of a grievance process through machination, misrepresentation, or

intimidation." Id.

The PLRA also mandates that inmates "properly" exhaust administrative

remedies before filing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 93

(2006).  "Proper exhaustion demands compliance with an agency's deadlines and

other critical procedural rules because no adjunctive system can function

effectively without imposing some orderly  structure on the course of its

proceedings."  Id. at 90–91.  Such requirements "eliminate unwarranted federal-

court interference with the administration of prisons, and thus seek[ ] to 'affor[d]

corrections officials time and opportunity to address complaints internally before

allowing the initiation of a federal case.' " Id. at 93 (quoting Porter v. Nussle, 534

U.S. 516, 525 (2002).).  The requirement may not be satisfied "by filing an

untimely or otherwise procedurally defective  . . .  appeal."  Woodford, 548 U.S. at

83; see also Spruill v. Gillis, 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a

procedural default analysis to reach the same conclusion).  "The level of detail

necessary in a grievance to comply with the grievance procedures will vary from

system to system and claim to claim, but it is the prison's requirements, and not the

PLRA, that define the boundaries of proper exhaustion."  Jones v. Bock, 549 U.S.

199, 211–212 (2007).

Finally, whether an inmate has exhausted administrative remedies is a

question of law that is to be determined by the court, even if that determination

requires the resolution of disputed facts.  See Small v. Camden County, 728 F.3d.

265, 268 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir.

2010).

It is clear that Scott challenged the hearing examiner's finding of guilt on

the misconduct *via* the administrative review process.  It is equally clear that he

failed to properly pursue the process to final review in that he failed to appeal to

the Office of the Chief Hearing Examiner.  In his opposition brief, he simply

reiterates the allegations of his complaint and does not address, in any manner, his

efforts to exhaust his administrative remedies.  (Doc. 21).  He concedes in his

Amended Complaint that there is a prisoner grievance procedure at SCI-Frackville

and represents that "he put in grievance" concerning the issues raised in his

Amended Complaint.  (Doc. 13, p. 2).  Beyond his allegation that "he put in

grievance," Scott offers nothing on the issue of administrative exhaustion.

The party adverse to summary judgment must raise "more than a mere

scintilla of evidence in its favor" in order to overcome a summary judgment

motion and cannot survive by relying on unsupported assertions, conclusory

allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458,

460 (3d Cir. 1989).  Scott has failed to meet this burden.  He failed to properly

utilize the administrative review process as required by the DOC and now his

claims are procedurally defaulted.  See Spruill, 372 F.3d at 232.  Accordingly, he is

barred from proceeding in federal court.

## IV.  Conclusion

Based on the foregoing, Defendants' motion (Doc. 17) for summary

judgment will be granted.

An appropriate Order will enter.

BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

Dated:  June 14, 2017